IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERESA SCHERER THOMPSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | No. 3:13-CV-429-G-BH |
| | ) | |
| HUGHES, WATTERS & ASKANASE, LLP, | ) | |
| | ) | |
| **Defendant.** | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case was automatically referred for pretrial management.  Before the Court for recommendation is *Hughes, Watters & Askanase, L.L.P.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*, filed February 19, 2013 (doc. 13).  Based on the relevant filings and applicable law, the motion should be **GRANTED**.

### I.  BACKGROUND

This action involves attempted foreclosure of real property located at 2524 Kings Gate Drive, Carrollton, Texas 75006 (the Property).  (docs. 3 at 1; 13-2 at 1.)[1]  On January 30, 2013, Teresa Scherer Thompson (Plaintiff) filed this *pro se* suit against Hughes, Watters & Askanase, LLP (Defendant) expressly asserting claims for violations of the Federal Debt Collection Practices Act (FDCPA) and negligence.  (doc. 3 at at 2–14.)

On October 8, 2004, Plaintiff obtained a mortgage loan in the amount of $202,000.00 and executed a promissory note and a deed of trust securing the note in favor of the lender.  (*See* doc. 13-1 at 2–3.)  The deed of trust was filed with the Dallas County Clerk, thereby "creating a valid, first lien on [the Property]."  (*Id.*)  In early 2011, Plaintiff filed a voluntary Chapter 13 bankruptcy

---

[1]   Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

petition in the U.S. Bankruptcy Court for the Northern District of Texas.  (*Id.* at 1.)  Some time after

that, Select Portfolio Servicing Inc. (SPS), the mortgage servicer as attorney-in-fact for the

mortgagee,[2] filed a "Motion for Relief from the Automatic Stay."  (*Id.* at 2.)  The bankruptcy court

then issued an "agreed order relative to the automatic stay" on April 28, 2011.  (*See id.* at 1–7.)  In

the agreed order, Plaintiff, who was represented by counsel, agreed to pay $6,386.08 in arrears on

her mortgage as well as attorney's fees, and to continue paying to SPS "regular post-petition

monthly payments" of $1,956.58.  (*Id.*  at 3.)  If Plaintiff failed to make the payments, SPS would

send her a default notice and allow her 10 days to cure the default.  (*Id.* at 5.)  If Plaintiff did not

cure the default within that time, or otherwise failed to comply with the terms and conditions of the

agreed order, the automatic stay would "terminate without further notice or court action to enable

[SPS], its successors and assigns, to take all action authorized under the contract and applicable law,

including, without limitation, loan workouts, foreclosure[,] and/or eviction."  (*Id.* at 5–6.)  Plaintiff's

counsel and Defendant, as counsel for SPS, were listed as the "counsel of record."   (*Id.* at 7.)

Plaintiff apparently defaulted, and on March 27, 2012, Defendant mailed her a notice of default

instructing her to pay four post-petition mortgage payments totaling $7,191.68, plus a $75 notice

fee.  (doc. 13-2 at 1.)

Plaintiff's verified complaint alleges that "Defendant undertook the role of debt collector"

"by initiating [the] collection proceedings."  (doc. 3 at 7.)  It claims Defendant violated the FDCPA

"by using false, deceptive, and misleading representations or means" in attempting to collect the

debt, by "misrepresenting the character, amount, and legal status of the debt," and by "threatening

---

[2]   The mortgagee was Deutsche Bank National Trust Company, as trustee on behalf of the Holders of the First Franklin
Mortgage Loan Trust 2004-FFH4 Asset Backed Certificates, Series 2004-FFH4 (Deutsche Bank). (doc. 13-1 at 4.)

to take action against Plaintiff that could not legally be taken." (*Id.* at 10.)  It contends that the notice represented that Defendant had "authority to exercise foreclosure on [a] lien against the Property," and that the representation was false because she had no contract with Defendant and never executed a lien in its favor.  (*Id.* at 3.)  Plaintiff allegedly sent Defendant a "debt validation letter" pursuant to the FDCPA, requesting that it verify the debt, but it never responded.  (*Id.*)  She now questions Defendant's right to send her the notice or collect on the debt, and claims that she "may not, in good faith, respond with payment" until she confirms its authority.  (*Id.* at 4.)  She demands "strict verified proof" of numerous conditions, including that Defendant "is the singular and true holder of [the] debt instrument" and that Plaintiff contracted with Defendant or authorized a lien on the Property in Defendant's favor.  (*Id.* at 10–12.)

Plaintiff also claims that the notice constituted a "presentment" of a negotiable instrument pursuant to § 3-501 of the Texas Uniform Commercial Code (UCC).  (*Id.* at 3.)  Further, Defendant was negligent in attempting to collect a debt without authority, and it engaged in a fraudulent and negligent scheme to "collect monies" from Plaintiff that were not owed to Defendant.  (*Id.* at 4, 11, 13–14.)  As a result, she was prevented from "achieving quiet title" to the Property and suffered $844,086.99 in damages.  (*Id.* at 4, 11.)  She also suffered "severe emotional distress" at the threat of foreclosure if she did not pay the money extorted by Defendant.  (*Id.*)  Based on the allegations, the complaint expressly asserts claims for negligence and violations of the FDCPA.  (*Id.* at 10–14.) It also appears to assert claims for negligence *per se*, negligent misrepresentation, fraud, and suit to quiet title.  (*See id.* at 4–14.)

On January 30, 2013, Plaintiff filed a motion for a temporary restraining order (TRO) to enjoin Defendant from foreclosing on the Property (doc. 7), which the Court denied on February 27,

2013 (docs. 11; 15).  Defendant moved to dismiss Plaintiff's complaint on February 19, 2013.  (doc. 13.)  Plaintiff did not respond to Defendant's motion.  The motion is now ripe for recommendation.

## II.  RULE 12(b)(6) STANDARD

Defendant moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 13.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

4

The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to

plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
> ity, it "stops short of the line between possibility and plausibility of `entitlement to
> relief."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  When plaintiffs "have not nudged their

claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*,

550 U.S. at 570.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with

a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude

the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*,

847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise,

LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented

to and not excluded by the court," however, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all

the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley

Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Likewise, documents "attache[d] to a motion to

dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Defendant has attached to its motion to dismiss copies of what it claims are the "agreed order relative to the automatic stay," a warranty deed relating to the Property, Defendant's default notice dated March 27, 2012, Plaintiff's request for debt validation dated January 26, 2013, and a notice of intent to sue Plaintiff sent Defendant in early 2013. (docs. 13-1–13-3.) The agreed order and warranty deed are matters of public record that can be judicially noticed. *See* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds"). Defendant's default notice and Plaintiff's validation request and notice of intent to sue are referenced in her complaint and are central to her claims, they are therefore considered part of the pleadings. *See Collins*, 224 F.3d at 498. Because the documents attached to Defendant's motion to dismiss are either part of the pleadings or matters subject to judicial notice, conversion of the motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n. 9.

### III. FDCPA CLAIMS

Defendant seeks dismissal of Plaintiff's FDCPA claims under §§ 1692e(2) and (5), 1692f

, and 1692g(a)–(b) on grounds that her factual allegations fail to state a viable claim for relief.  (doc. 13 at 3.)

The purpose of FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors."  *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351–52 (5th Cir. 2002) (citation omitted); *see also* 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010).  For instance, the FDCPA prohibits a debt collector from making "false, deceptive, and misleading misrepresentations in connection with debt collection" and from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. §§ 1962e and 1962f.  The Act also requires a debt collector, within five days after its "initial communication with a consumer in connection with the collection of any debt," to provide the consumer with five disclosures, including her right to dispute or request validation of the debt.  *See id.* § 1692g(a).[3]

In determining whether a debt collector has committed a violation, the debt collector's representations, notices, and communications to the consumer are viewed objectively, from the standpoint of the "least sophisticated" or an "unsophisticated consumer."  *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (citations omitted); *accord Gonzalez v.*

---

[3]  The required disclosures are:
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

*Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  While such a consumer is assumed to be "neither shrewd nor experienced in dealing with creditors," she "should not be considered as tied to the very last rung on the intelligence or sophistication ladder." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004).  "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained, and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Gonzalez*, 577 F.3d at 603 (citing *Taylor*, 103 F.3d at 1236).

A.   **Applicability of the FDCPA**

Defendant first argues that Plaintiff's FDCPA claims are subject to dismissal because the complaint "fails to establish that the FDCPA applies to either the Loan or to any conduct of [Defendant]."  (doc. 13 at 4.)

1.   *Consumer Debt*

According to Defendant, Plaintiff has failed to plead any facts showing the obligation underlying her FDCPA claims was a "consumer debt" under the FDCPA.  (doc. 13 at 3–4.)

The FDCPA defines a "debt" as "any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).   In turn, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).  To determine whether a debt is a "consumer debt" for purposes of the FDCPA, courts "focus on the nature of the debt that was incurred, and not the purpose for which the [a]ccount was opened." *Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114-TJW-CE, 2011 WL 1195941, at *5 (E.D.

8

Tex. Mar. 7, 2011), *rec. adopted*, 2011 WL 1157692 (E.D. Tex. Mar. 28, 2011) (collecting cases).
In identifying the "nature" of the debt, the relevant inquiry is the debtor's "use" of the loaned funds.
*See Garcia v. LVNV Funding*, No. A–08–CA–514–LY, 2009 WL 3079962, at *3 (W.D. Tex. Sept.
18, 2009) ("Whether a debt is a consumer debt [under the FDCPA] is determined by the use of loan
proceeds by the borrower and not by the motive or intent of the lender.") (citing *Bloom v. IC Sys.,
Inc.*, 753 F. Supp. 314, 317 (D. Or. 1990)).

Plaintiff avers "Defendant is collecting a debt concerning a consumer mortgage agreement."
(doc. 3 at 5.)  She claims her mortgage is a consumer debt because "it constitutes an obligation to
pay money that arose out [of] a transaction in which the property was primarily for personal, family,
or household purposes."  (*Id.* at 5–6.) The agreed order required Plaintiff to make post-petition
payments to SPS pursuant to a home mortgage Plaintiff obtained on October 8, 2004.  (docs. 13-1
at 2–3; 13-2 at 1.)  The deed of trust created a "valid, first lien" on the Property, which Plaintiff
claims is her "primary place of residence."  (docs. 13-1 at 2–3; 3 at 11.)  In light of the agreed order,
Plaintiff's allegations raise a reasonable inference that the "debt" referenced in the default notice
arose from a home mortgage loan, which may reasonably be said to be "primarily for personal,
family, or household purposes."  *See* 15 U.S.C. § 1692a(5).  Plaintiff has therefore stated sufficient
facts to show that the obligation underlying her FDCPA claims was a "consumer debt."

### 2. *Debt Collector*

Defendant next contends that Plaintiff's failure to "allege that the principal purpose of the
business of [Defendant] is the collection of debts or that [Defendant] regularly collects debts" is fatal
to her FDCPA claims, since she fails to show that Defendant was a "debt collector." (doc. 13 at 4.)

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute sets forth two categories of debt collectors, those who collect debts as the "principal purpose" of their business and those who collect debts "regularly." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (citing *Garrett v. Derbes*, 110 F.3d 317 (5th Cir. 1997)).

According to Plaintiff, "Defendant undertook the role of debt collector" "by initiating the collection proceedings." (doc. 3 at 7.) The default notice stated that Defendant "represent[ed] [SPS] in connection with [Plaintiff's] bankruptcy case", that she owed four post-petition payments totaling $7,191.68, and that another payment would soon "become due and owing." (doc. 13-2 at 1–2.) She was to deliver payment "in good and sufficient funds" "directly" to SPS. (*Id.*) Defendant copied SPS on the notice. (*See id.*) Viewed in the light most favorable to Plaintiff under a Rule 12(b)(6) standard, the default notice gives rise to a reasonable inference that Defendant engaged in a business the "principal purpose of which [was] the collection of debts ... owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6). Plaintiff has therefore sufficiently alleged that Defendant was a debt collector for purposes of the FDCPA. *See id.*

## B.      § 1962e: False or Misleading Representations

Defendant moves to dismiss Plaintiff's claims under §1692e(2) and (5) on grounds that the default notice and the agreed order negate her allegations that Defendant lacked authority to send

the notice and that the information in the notice was inadequate.  (doc. 13 at 4–5.)

### 1.      § 1692e(2)

Section 1692e(2) generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. §1692e(2).  In particular, § 1692e(2)(A) prohibits a debt collector from misrepresenting "the character, amount, or legal status of any debt."  *Id.*

Plaintiff claims Defendant misrepresented the character, amount, and legal status of the debt by: (1) presenting a "debt instrument" for "payment" despite not being "a bona fide holder of [the] instrument";[4] (2) attempting to collect on the debt without having authority to do so; (3) "fail[ing] to itemize the various charges that comprised the total amount of the alleged debt"; and (4) "fail[ing] to clearly and fairly communicate information about the amount of the alleged debt to Plaintiff," including "how the total amount due was determined" and whether it "includ[ed] add-on expenses like attorney's fees or collection costs."  (doc. 3 at 3–4, 10–11, 13.)

The agreed order listed Defendant as "counsel of record" for SPS.  (*See* doc. 13-1 at 7.)  As counsel, Defendant was SPS's "agent" and could lawfully pursue its interests listed in the order.  *See C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (explaining that "[the relationship between client and attorney … is a quintessential principal-agent relationship") (citation and internal quotation marks omitted); *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567 (Tex. 1962) (Under Texas law, "[t]he attorney-client relationship is one of principal and agent.").  Plaintiff's allegations fail to raise a

---

[4] Plaintiff's allegation appears to refer to the general principle that when a lender seeks a personal judgment against the borrower for payment of a promissory note (a negotiable instrument), the lender "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012); *see also* Tex. Bus. & Com. Code §§ 3.301 (defining who is a "person entitled to enforce" a negotiable instrument), 3.302 (defining who is a "holder in due course"), and 3.201–3.204 (providing the requirements for the negotiation, transfer, and endorsement of a negotiable instrument).

reasonable inference that Defendant lacked authority to send her the default notice on SPS's behalf.

The default notice also specified that Defendant was sending it pursuant to the agreed order. (*See* doc. 13-2 at 1–2.) Because Defendant was not seeking a personal judgment against Plaintiff based on the note, but rather, was only enforcing the terms of the agreed order, it was not required to show it was the holder or the person entitled to enforce the note.   Lastly, the notice informed Plaintiff that she owed four post-petition payments dating December 1, 2011 to March 1, 2012, each in the amount of $1,797.92.  (*Id.*)  A $75 "notice fee", which was authorized by the agreed order, was also assessed.  (*Id.* at 1.)  This information negates Plaintiff's allegations that the notice did not explain or "itemize" how the total balance due was calculated.

Plaintiff fails to assert facts sufficient to show the notice contained false, deceptive, or misleading representations. Her claim under § 1692e(2) fails and should be dismissed.

### 2.      § 1692e(5)

Subsection 1692e(5) prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

Plaintiff asserts that Defendant "threaten[ed] to take action against Plaintiff that could not legally be taken" and made "direct, indirect, and [in]valid threats of dire consequences to [her] if [she] failed to pay the alleged debt."  (doc. 3 at 10, 13.)  Her failure to identify the threats that Defendant allegedly made is sufficient grounds to dismiss her claim.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.) (citing *Twombly*, 550 U.S. at 555).  To the extent Plaintiff refers to the statement that "[i]n the event that [the] default [was] not cured ... within ten [] days from the date of [the] letter, the automatic stay ... [would] terminate ... and the mortgage company [would]

12

accelerate the debt," her claim fails because this language was expressly authorized by the agreed order.  (*See* docs. 13-1 at 5–6; 13-2 at 2.)  Accordingly, this claim should also be dismissed.

**C.**     **§ 1692f: Unfair Practices**

Defendant seeks dismissal of Plaintiff's claim under § 1692f, arguing that "there was nothing unfair or unconscionable about" sending the default notice since the agreed order expressly authorized it to do so.  (doc. 13 at 6.)

Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C.A. § 1692f.  "Without limiting the general application of [§ 1692]," the statute provides a non-exclusive list of practices that violate the Act, such as collecting "any amount" that is not "expressly authorized by the agreement creating the debt," and "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property."  *See id.* § 1692f (1)–(8).

Here, Plaintiff avers only that Defendant violated § 1692f because its "dunning letter dated March 27, 2012, ... which asked for a lump sum of money," constituted "false, deceptive, and misleading representations or means in connection with the collection of an alleged debt" and was a "threat[] to take action against Plaintiff that could not legally be taken."  (doc. 3 at 10, 16.)  These allegations are duplicative of her claims under § 1692e(2) and (5).  Because she has failed to show that the default notice contained false, deceptive, or misleading representations, or that Defendant threatened to take any action that could not or would not legally be taken, she fails to state a plausible claim for relief under § 1692f, and the claim should be dismissed.

**D.**     **§ 1692g(a)–(b): Validation Notice Requirements**

Defendant next moves to dismiss Plaintiffs' claims under § 1692g for failure to state a claim

upon which relief can be granted.  (doc. 13 at 6–7.)

### 1.      Failure to Validate the Debt or Cease Collection Efforts

Defendant contends that Plaintiff's allegation that Defendant did not validate the debt cannot

entitle her to relief because she fails to assert any facts showing that it engaged in debt collection

between the date she sent the validation request and the date she filed suit.  (doc. 13 at 5.)

"Within five days after [its] initial communication with a consumer in connection with the

collection of any debt," a debt collector must provide the consumer with five disclosures[5] concerning

her right to dispute or request validation of the debt, "unless [that] information is contained in the

[debt collector's]  initial communication or the consumer has paid the debt."  15 U.S.C. § 1692g(a).

If the consumer disputes or requests validation of the debt in writing within 30 days after receiving

the debt collector's initial communication, the debt collector must cease its collection activities until

it   obtains   verification   or   provides   the   consumer   with   the   information   required   under

§ 1692g(a)(3)–(5).  *Id.* §1692g(b).  Although § 1692g(b) does not require the debt collector to

"provide   the   consumer   with   verification   of   the   debt,   [the   debt   collector]   does   need   to   cease

collection of the debt if no verification is provided to the consumer."  *Fallas v. Cavalry SPV I, LLC*,

No. 3:12-CV-05664 PGS, 2013 WL 1811909, at *6 (D.N.J. Apr. 29, 2013); *accord Peter*, 310 F.3d

---

[5]  These disclosures are:
>     (1) the amount of the debt;
>     (2) the name of the creditor to whom the debt is owed;
>     (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the
>     validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>     (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period
>     that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt
>     or a copy of a judgment against the consumer and a copy of such verification or judgment will be
>     mailed to the consumer by the debt collector; and
>     (5) a statement that, upon the consumer's written request within the thirty-day period, the debt
>     collector will provide the consumer with the name and address of the original creditor, if different
>     from the current creditor.
> 15 U.S.C. § 1692g(a).

at 348 (explaining that "the debt collector must cease collection of the debt ... *until* the [requested information] is mailed to the consumer") (citing 15 U.S.C. § 1692g(b)) (emphasis added).

Here, Plaintiff alleges that she received Defendant's default notice, dated March 27, 2012. (doc. 3 at 2.)  She purportedly sent Defendant a "debt validation request" but Defendant did not respond.  (*Id.* at 3.)  Although unclear, even assuming for purposes of this motion that Plaintiff's request was timely,[6] her claim still fails and is subject to dismissal because she does not allege or assert facts sufficient to show that Defendant engaged in collection activities during the four days between the date she sent her request and the date she filed suit.  *See Fallas v. Cavalry SPV I, LLC*, No. 3:12-CV-05664 PGS, 2013 WL 1811909, at *6 (D.N.J. Apr. 29, 2013) (dismissing the plaintiff's claim under § 1692g(b) because he had "not alleged that [the defendant] sent any further communications or conducted any further debt collection activities with respect to the debt referenced in the [initial] collection letter" after the plaintiff disputed the debt).

## 2.    *Overshadowing Activities*

According to Defendant, "the complaint fails to state a claim for 'overshadowing'" because it "does not allege how the [default notice] or any other act or communication of [Defendant] [was] inconsistent with the disclosure of Plaintiff's right to dispute the debt."  (doc. 13 at 7.)

During the 30-day period triggered by the § 1692g(a)(3)–(5) disclosures, a debt collector may not engage in communications or other collection activities that "overshadow" or are

---

[6] Plaintiff does not allege that she mailed her request within 30 days after receiving Defendant's *initial communication*. *See* 15 U.S.C. §§ 1692g(a)–(b).  The "debt validation demand" attached to Defendant's motion to dismiss is dated January 26, 2013, which shows that it was sent more than 30 days after Defendant sent its March 27, 2012 default notice. (*See* docs. 13-2  and 13-3.)  Plaintiff's claim under § 1692g(b) fails for this reason alone.  *See Cunningham v. Credit Mgmt., L.P.*, No. 3:09-CV-1497-GB(BF), 2010 WL 3791104, at *3 (N.D. Tex. Aug. 30, 2010), *rec. adopted*, 2010 WL 3791049 (N.D. Tex. Sept. 27, 2010) (holding that the plaintiff failed to state a claim under § 1692g(b) because he mailed his alleged validation request "well beyond the thirty-day period the FDCPA allows to dispute a debt").

"inconsistent" with "the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  15 U.S.C. § 1692g(b); *Reed v. Sw. Credit Sys., LP*, No. CIV.A. H-12-3255, 2013 WL 1966973, at *4 (S.D. Tex. May 10, 2013).  Any communication by part of the debt collector during this time must not distort, obfuscate, or contradict the meaning of the disclosures under § 1692g(a)(3)–(5).  *Peter*, 310 F.3d at 348; *Reed*, 2013 WL 1966973, at *4.

Here, Plaintiff avers only that "Defendant['s] 'Bill' meets the definition of overshadowing" because the "balance due" and the instruction that the "account [be] paid in full ... overshadow[ed] the consumer warning on the document." (doc. 3 at 13.)  Plaintiff's sparse allegations do not show how or why the least sophisticated or an unsophisticated consumer would find that this language distorted, obfuscated, or contradicted her rights to dispute or obtain verification of the debt under § 1692g(a)(3)–(5).  She therefore fails to state a viable claim for overshadowing under § 1692g(b), and the claim is subject to dismissal.

## IV.  NEGLIGENCE CLAIMS

Defendant moves to dismiss Plaintiff's claims for negligence and negligence *per se*.  (doc. 13 at 8–9.)  The complaint expressly asserts a claim for ordinary negligence and could be liberally construed as also asserting claims for negligence *per se* and negligent misrepresentation.  (*See* doc. 3 at 4, 8–9, 13–14.)

### A.    <u>Ordinary Negligence</u>

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).  The defendant's breach is the

"proximate cause" of the plaintiff's harm when it is a "cause in fact" of the harm and "a reasonable prudent person should have known of the anticipated danger created by [breach]." *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *13 (E.D. Tex. Oct. 2, 2012); *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774–75 (Tex. 2010).

Plaintiff claims Defendant was negligent in sending her the default notice even though "Defendant knew, or should have known" that it "lacked [the] standing and/or capacity" to do so. (doc. 3 at 13–14.)  She claims its conduct harmed her and "result[ed] in [a] civil tort." (*Id.* at 14.) As discussed, the pleadings fail to show that Defendant lacked standing to send the default notice. The allegations also fail to raise a reasonable inference that Defendant owed Plaintiff a duty of care and breached that duty.  Plaintiff fails to assert facts showing her damages, and contends she will not "respond with payment" until she confirms Defendant's authority. (*Id.* at 4.) Because Plaintiff's negligence claim is factually unsupported, the claim should be dismissed.

## B.   **Negligence *Per Se***

Defendant construes the complaint as asserting a claim for negligence *per se* and moves to dismiss the claim on grounds that the complaint "fails to identify any statute [Defendant] purportedly violated, allege any facts showing that [Defendant] violated such unspecified statute, or that 'such' statute is one for which tort liability lies." (doc. 13 at 8–9.)

"Negligence *per se* applies when the courts have determined that the violation of a particular statute is negligence as a matter of law." *Allison*, 2012 WL 4633177, at *13 (citation omitted); *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997).  "In such a case, ... [t]he statute itself" provides the standard of care by "stat[ing] what a reasonable, prudent person would have done." *Jackson v. Tae Jin Kim*, No. 2:02-CV-200, 2004 WL 6040969, at *3 (E.D. Tex. Sept. 27, 2004) (citation

omitted).   Unless an excuse is raised, "the only inquiry ... is whether the defendant violated the

statute ... and, if so, whether the violation was a proximate cause of the [plaintiff's injury]."   *Id.*

Notably, courts are "not required to find negligence *per se* from a violation of a federal statute,

particularly where the violation would not give rise to liability under state common law." *Hackett*

*v. G.D. Searle & Co.*, 246 F. Supp. 2d 591, 594 (W.D. Tex. 2002) (citing *Johnson v. Sawyer*, 47

F.3d 716, 728–29 (5th Cir. 1995) (en banc)).   Because "[d]uties set forth in [the] *federal law* do not

... automatically create duties cognizable under *local tort law*," "[t]he pertinent question is whether

the duties set forth in the federal law are analogous to those set forth in local tort law." *Johnson*, 47

F.3d at 729 (citing with approval *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1158 (D.C.

Cir. 1985)) (emphasis in *Johnson*).

　　　Here, Plaintiff essentially contends that Defendant committed negligence *per se* "by

attempting to collect a debt" even though it "failed to [provide] the *statutorily* required validation

of [the] debt." (doc. 3 at 4) (emphasis added).   Plaintiff's failure to show Defendant did not validate

the debt is fatal to any negligence *per se* claim.   Moreover, any violation of § 1692g(b) would not

automatically entitle her relief since she has not identified a specific "duty" to validate a debt under

Texas law that is "analogous" to § 1692g(b) of the FDCPA. *See Johnson*, 47 F.3d at 729.   Nor has

Plaintiff provided any reasons for applying the negligence *per se* doctrine to violations of the

FDCPA.   *See Jackson*, 2004 WL 6040969, at *3  ("declin[ing] to create a new cause of action" for

negligence *per se* based  on violations of 23 C.F.R. § 625 et seq. in part because the plaintiff did not

provide any grounds for doing so); *Hackett*, 246 F. Supp. 2d at 594 (reaching the same conclusion

with respect to the Federal Drug and Cosmetic Act and various Food and Drug Administration

regulations).   Any negligence *per se* claim fails and is subject to dismissal.

C.     **Negligent Misrepresentation**

Although not expressly listed as a claim, the complaint appears to assert a claim for negligent misrepresentation.  (*See* doc. 3 at 13–14.)

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 762 (N.D. Tex. 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005)).

Plaintiff alleges that "Defendant made a false representation [by] demanding payment on a debt" while "Defendant knew or should have known that said demand was made without standing or capacity on part of Defendant."  (doc. 3 at 14.)  "Plaintiff believed Defendant and was harmed thereby."  (*Id.* at 13–14.)  Given Defendant's status as counsel for SPS, the allegations fail to raise a reasonable inference that Defendant's representation that it could send the default notice was false.  In addition, Plaintiff does not allege that she justifiably relied on the alleged misrepresentation, or that she suffered any pecuniary loss as a result.  Instead, she asserts she will not "respond with payment" until she confirms Defendant's authority to collect it.  (*See* doc. 3 at 4.)  To the extent Plaintiff asserts a claim for negligent misrepresentation, the claim is factually unsupported and should be dismissed for failure to state a claim.  *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734–35 (N.D. Tex. 2011) (dismissing negligent misrepresentation claim for failure to state a claim; finding that the plaintiffs' allegations that the defendant "made false

representations" were vague and conclusory and they "failed to plead sufficient facts to show that they relied on these representations to their detriment ... [and] [did] not make allegations of [suffering] pecuniary loss").

The Court may *sua sponte* dismiss Plaintiff's claim for negligent misrepresentation on its own motion under Rule 12(b)(6) as long as Plaintiff is given notice of the Court's intention and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (explaining that a "court has the authority to consider the sufficiency of a complaint and dismiss an action on its own motion as long as the procedure employed is fair") (citing *Carroll*, 470 F.3d at 1177).  The fourteen days allowed for filing objections to the recommended dismissal ensures that the procedure is fair by providing Plaintiff with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

## V.  OTHER CLAIMS

### A.  <u>Common-Law Fraud</u>

Defendant construes the complaint as asserting a claim for fraud and moves to dismiss the claim for failure to meet the heightened pleading requirements of Rule 9(b), arguing that Plaintiff fails to identify the fraudulent statements that Defendant allegedly made and explain why the statements were fraudulent.  (doc. 13 at 7.)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation

recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics*, 343 F.3d at 724.

Plaintiff claims the default notice was "fraudulent" because "Defendant had no authority" to send it or "collect monies not owed to Defendant."  (doc. 3 at 10.)  Defendant intended that Plaintiff "accept" its misrepresentations "as true", "Plaintiff believed Defendant[,] and was harmed thereby."  (*Id.* at 14.)  She suffered $844,086.99 in damages and "severe emotional stress" as a result.  (*Id.* at 11.)  Although Plaintiff attempts to establish the "who, what, when, where, and how," with respect to her fraud claim as required by Rule 9(b), the claim fails under Rule 12(b)(6) because

it is based solely on her failed attempt to challenge Defendant's authority to send the default notice.

Accordingly, any fraud claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

**B.**     <u>Suit to Quiet Title</u>

According to the complaint, Defendant's conduct prevented Plaintiff from "achieving quiet title at [the] completion of the contract." (doc. 3 at 11.) In the "prayer" section, Plaintiff "prays for judgment against Defendant ... [f]or quiet title to the Property." (*Id.* at 14.) These allegations may be liberally construed as asserting a quiet title claim.

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Plaintiff refers to a quiet title claim by name but fails to allege sufficient facts to state a plausible claim for relief. The sole allegation in the complaint that relates to a quiet title cause of action is her contention that she owns the Property. *(See* doc. 3 at 13.) Ultimately, because she does not allege or state facts to show Defendant has asserted a claim against the Property, any quiet title claim fails and should be *sua sponte* dismissed. *See Gordon*, 352 S.W.3d at 42; *see also Carroll*, 470 F.3d at 1177.

## C.    Declaratory Judgment Action

Plaintiff seeks declaratory judgment to "quiet title" to the Property. (doc. 3 at 14.)

Because Plaintiff filed suit in federal court, her declaratory judgment action is construed as arising under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*

Here, Plaintiff seeks to "quiet title" to the Property. (doc. 3 at 14.) Given her failure to state a viable quiet title claim against Defendant, or demonstrate that a genuine controversy exists between the parties, her declaratory judgment action should be dismissed. *See Bell v. Bank of Am.*

*Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner*, 2011 WL 3606688, at *5–6 (declining to entertain the plaintiff's request for declaratory judgment where he had not factually pleaded a plausible substantive claim).

## VI.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiff has not amended her complaint since filing this action. Although she did not respond to Defendant's motion to dismiss, it does not appear that she has stated her best case to the Court with respect to any of her claims. She should therefore be accorded an opportunity to amend the complaint to sufficiently state a claim for relief.

## VII.  RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED,** and all of Plaintiff's claims against Defendant should be dismissed with prejudice. If Plaintiff timely files an amended complaint, however, Defendant's motion to dismiss should be **DENIED as moot,** and the action should be allowed to proceed on the amended complaint.[7]

**SO RECOMMENDED** on this 25th day of July, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Defendant requests that in the event that its motion to dismiss is denied, "Plaintiff be order[ed] to plead her claims with greater specificity, so as to enable [Defendant] to defend itself". (*See* doc. 13 at 9.) It does not specifically seek relief through a motion under Fed. R. Civ. P. 12(e). Because dismissal of Plaintiff's complaint is being recommended for failure to state a claim if she does not timely amend her complaint, it is not necessary to reach this request.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE